CHARLES H. DAVIS *et al. against* MYNDERT VAN BUREN,
sole executor of Jordan Mott, deceased.

(Decided April 3d, 1876.)

The obligation of the sureties on an undertaking given under § 187 of the Code,
upon the arrest of a defendant, being joint and not several, the estate of a
surety who dies cannot be held on it.*

APPEAL by plaintiff from a judgment of this court entered
on the decision of Judge ROBINSON dismissing the complaint.

The action was brought against the defendant on an under-
taking executed by his testator in a suit by these plaintiffs
against one J. O. Bixbee, to release the defendant there from
the custody of the sheriff. The undertaking was as follows :

[Title of the suit.]

The above-named defendant, J. Oscar Bixbee, having been
arrested by Matthew T. Brennan, sheriff of the city and county
of New York, upon an order of arrest, granted by Hon. H. W.
Robinson, in a certain action commenced in the above-named
court, by the above-named plaintiffs, against the above-named
defendant.

We, J. Oscar Bixbee, of South Norwalk, in the State of
Connecticut, by occupation speculator, and Benjamin G. Bloss,
of No. 116 West 49th street, in the city of New York, by oc-
cupation insurance, and Jordan Mott, of foot of 54th street,
Hudson river, in the city of New York, by occupation gentle-
man, hereby undertake, in the sum of thirteen thousand
($13,000) dollars, that the above-named defendant arrested
as aforesaid, shall at all times render himself amenable to the
process of said court, during the pendency of this action, and to
such as may be issued to enforce the judgment therein.

[Signatures of obligors.]

---

* By § 812 of the new Code of Procedure, as amended in 1877, the undertak-
ing given by the defendant to procure his release from custody when taken by the
sheriff on an order of arrest must be joint and several.

The following opinion was rendered by Judge ROBINSON, in which all the facts are fully stated:

"This action is brought upon an undertaking in the sum of $13,000, executed by one J. Oscar Bixbee, said Jordan Mott (the defendant's testator), and Benjamin G. Bloss, under the provisions of section 187 of the Code, in an action commenced in this court, by these plaintiffs, against said Bixbee, as defendant, wherein an order of arrest had been issued against said Bixbee, to the sheriff of this county, under the provisions of section 179 of the Code.

"The obligation in which they thus united was to the effect that said Bixby should at all times render himself amenable to the process of the court, during the pendency of the action, and to such as might be issued to enforce the judgment therein. Plaintiffs subsequently, and on October 4, 1873, recovered judgment therein for $7,713 53, and after a return of an execution issued thereon, against the property of the defendant, Bixbee, 'wholly unsatisfied,' and also one against his person, 'not found,' the judgment debt being wholly unpaid, they, in January, 1874, commenced an action against Bloss and Mott, the bail, by service of a summons upon Bloss, but before service on Mott, he died. No further proceedings were had in that action, as Bloss was shortly afterward declared a bankrupt, and has, since the commencement of this action, been discharged in bankruptcy from his debts. Subsequent to such decree in bankruptcy, adjudging Bloss was a bankrupt, this action was commenced against the defendant, the executor of said Jordan Mott.

"The case has been tried before me, without a jury, and upon the pleadings and proofs the question presented by the counsel for the respective parties is as to the liability of the defendant, as executor of Jordan Mott, one of the bail, after his death, and the insolvency of Bloss, the survivor, upon the undertaking of the bail.

"Defendant contends, as matter of law, that upon the death of Jordan Mott, leaving his co-surety Bloss surviving, his estate was discharged from all liability upon the undertaking. That, being only joint in form, it was also so in legal effect, and

cannot be construed by any legal intendment into a several obligation.

" That the instrument was joint in form appears from the terms of the undertaking, no words expressing a several obligation being used, and that the ordinary undertakings required to be executed under the provisions of the Code, being in form joint, are equally so in legal force and effect, has been repeatedly held in this court, and was so decided at general term in *Tannenbaum* v. *Cristalar* (5 Daly, 141). It is also so held in *Perry* v. *Chester* (12 Abb. Pr. N. S. 131), and on affirmance of that case in the Court of Appeals (53 N. Y. 240).

"It is also well settled, that in every case of a joint suretyship, if one of the sureties dies before judgment against him, leaving another or other sureties surviving him, his estate is discharged from liability (*United States* v. *Price*, 9 How. [U. S.] 90 ; *Pickersgill* v. *Lahens*, 15 Wall. 140 ; *Getty* v. *Binsse*, 49 N. Y. 388, and cases cited).

" There is no allegation or proof that Jordan Mott was in any manner legally or equitably bound for the debt prosecuted against Bixbee, or any consideration advanced, upon which a court of equity might reform the instrument, and extend the liability of said Mott, under the undertaking in suit, not only as a joint, but also as a several obligation for the debt, as has been done in some cases (*Rawstone* v. *Parr*, 3 Russ. 539 ; *Jones* v. *Beach*, 2 De Gex, Macnaghten & Gordon, 886).

" Plaintiffs claim that the obligation of bail for the person, being attended by a delivery of the person of the debtor to their custody, they severally assume a primary and not collateral liability to produce him, upon the issuing of an execution against his person ; that the personal representative of a deceased bail, although other joint bail survive, continue to hold such custody and to be liable to make such surrender ; but he fails to produce an authority or to present any convincing argument, that the liability of a joint surety on such an undertaking is in any respect different from its precise tenor as a common-law obligation, or from that of any other joint undertaking, for which provision is made in the Code, or that such custodianship of the debtor remains after the death of one surety in any but the

surviving sureties ; and the cases to which he refers, authorizing the surrender of the principal by the personal representative of the bail, in no way indicate that such power is not confined to the personal representative of a sole, several or surviving surety (Tidd's Pr. form 73 ; 14 Gratt. [Va.] 318, 698).

"Regarding the undertaking in suit, as in law, the joint obligation of those executing it, and subject to all the incidents of such an instrument at common law, the estate of Jordan Mott was, on his death, upon the principles above stated, released from the obligation he originally incurred. For these reasons judgment must be rendered for the defendant, with costs."

From the judgment entered on this decision the plaintiffs appealed to the court at general term.

*Charles W. Seymour*, for appellants.

I. The undertaking of bail is clearly upon a new consideration, and its parties are in law principal debtors. Bail is a unique office or relation, and unlike in its nature that of a party to any other undertaking prescribed by the Code. 1. Certain classes of persons capable of entering into other contracts, are incapacitated from serving as bail (15 Johns. 535 ; 4 Bosw. 632 ; attorneys' partners and clerks, 2 B. & P. 504; turnkeys and jailors, 2 B. & P. 150 ; persons indemnified by defendant's attorneys, 1 Bing. 64). 2. The powers and authority given bail are exceptional. They keep the person bailed in their custody, or can take his body even on Sunday ; can break the door to reach him, and can take him in another State. They can delegate their rights to another (*Nicolls* v. *Ingersoll*, 7 Johns. 145 ; *Boardman* v. *Fowler*, Col. & Cai. Cas. 111 ; s. c. 1 Johns. 413). The executor or administrator of bail has all the rights of surrender possessed by the bail while living (Crocker on Sheriffs, § 137). 3. The death or imprisonment of the person bailed frees them from all liability, while they can at any time rid themselves of responsibility if so inclined. The rules of construction applied by the courts to other undertakings, therefore, do not apply, as of course, to the undertaking of bail.

II. The bail of the Code is the special bail of the former

practice (*Steward* v. *Howard*, 15 Barb. 26). The courts apply all the rules of limitation, qualification, &c., of the old practice, to the bail under the Code, showing thus that they recognize the identity. Special bail were held severally liable, whether the bail piece contained words of severalty or not. " The creditor may proceed against both, or one " (*Steward* v. *Patten*, 1 Hall, 40; Petersdorff on Bail, 10 Law Library, \*223; *Kibbe* v. *Ballard*, Coleman & Caines' Cases, 56; 1 Tidd's Practice, 282, 8th ed. 1824; *Howard* v. *Bradberry*, 3 Dowl. 92; 3 Chitty's Practice, 365; *In re Taylor*, 7 Howard Pr. 212).

III. This is not an undertaking by mere sureties, and should not be so construed. 1. The very name given to the office, implies that it is more than that of a mere surety. " Bail," says Lord Coke, " is derived from the French name ' Bail,' a keeper or jailor " (4 Inst. 178). " A man bailed, is where any one arrested or in prison is delivered to others as his bail, who ought to keep him to be ready to appear at the time assigned " (Comyn Dig. tit. " Bail," A). The releasing of prisoners on mere security was once allowed, the prisoner giving " sureties ; " this was not called bail, but *mainprize*, and has been long abolished (Wood's Inst. 610). The verb used in law to denote the act of bail, in fulfilling the terms of their undertaking, is suggestive. They " *surrender* " the debtor. The prisoner, from the custody of the sheriff, is transferred to that of his bail, who hold him thenceforth, as the law expresses it, " on a string." They undertake to keep him safely, and produce him promptly, or pay the penalty (see *Appleby* v. *Robinson*, 44 Barb. 316). 2. The undertaking is an original, not a collateral contract, and its parties must therefore be deemed principals (Chitty on Contracts, 450–452, 9th Am. ed.). The release of the defendant from the custody of the sheriff, and the delivery of him to the bail, is the consideration—a new consideration, arising at the time of making, and out of the contract, and by the bail themselves. " Although the debt of another form the subject-matter of defendant's undertaking, still if he promised to pay the debt on some new consideration raised by himself," then the promise is original (Chitty on Cont. 452; *Slingerland* v. *Morse*, 7 Johns. 463; *Skelton* v. *Brewster*, 8 Johns. 376; *Gold* v. *Phil-*

*lips*, 10 Johns. 412; *Rogers* v. *Newland*, 13 Wend. 114; *Farlee* v. *Cleaveland*, 4 Cowen, 439). 3. The law recognizes this distinction, in the plenary power given to bail. They are to produce the debtor at the call of the court, and for that reason they have the power given them to do so. Not only can they do this in response to final process, but at any time, in any stage of the action, they can surrender, satisfy the requirements of their contract, and discharge themselves from liability. Had "sureties" possessed such powers—been made the custodians of the security of the creditor, with right to give it up at any moment and free themselves—having their remedy thus in their own hands, they would never have become the "favorites of the courts of equity." "Bail" are distinguished from "sureties," by the legislature of both Great Britain and our own country (49 George III, chap. 121; 1 Tidd's Pr. 3d Am. ed. 209). See also Code of Procedure, wherein the word "surety" is used in connection with every undertaking prescribed by it, except the undertaking of bail.

IV. If the undertaking is not a joint contract of mere sureties, plaintiffs should recover (*Ex parte Kendall*, 17 Vesey, 514, 525; Redfield on Law of Wills, Part II, p. 277; *Lawrence* v. *Trustees*, 2 Denio, 577; *Butts* v. *Genung*, 5 Paige, 254; *Parker* v. *Jackson*, 16 Barb. 33; *De Agreda* v. *Mantel*, 1 Abb. Pr. 130).

*Henry E. Knox*, for respondent.

CHARLES P. DALY, Chief Justice.—There is undoubtedly a difference between an undertaking given to discharge from an arrest and one given upon an appeal from a judgment. One is a substitute for the former bail to the sheriff and special bail (*In re Taylor*, 7 How. Pr. 212; *Steward* v. *Howard*, 15 Barb. 26), and the other is the substitute for the former bail in error (Graham's Pr. 948; 2 Dunlap Pr. 1138; 2 Rev. Stat. 595, §§ 25 to 35), and there were many things which were applicable to the former, that did not apply to the latter; such as the right of special bail to discharge themselves by surrendering their principal, or the right of one alone to do so, although the other was

fixed, having been separately sued; the suit against whom went on even after the principal was in custody, upon a surrender by the one who had not been sued (*Ballard* v. *Kibbe*, Col. & C. Cases, 56), and there were other distinctions. But these distinctions in no way affect the liability of a party upon a *joint* obligation or undertaking, and what was decided by this court in *Tannenbaum* v. *Cristalar* (5 Daly, 141), and by the Court of Appeals in the recent case of *Wood* v. *Fisk*, which were undertakings upon appeal, apply equally to an undertaking upon an arrest, where it is joint and not several.

The appellant states in his points, that special bail were held severally liable, whether the bail piece contained words of severalty or not. He refers to no case for such a proposition, and would find none, for special bail were severally and jointly liable from the nature of their undertaking by the common law, which was very different from a bond or from an undertaking under the Code. Special bail, or more properly bail to the action, or bail alone, was put in by a bail piece, signed by the bail, which was entitled in the court and of the term, which simply declared that A. B. was delivered to bail, on the taking of his body to C. D. and E. F., at the suit of G. H., in a plea of trespass, &c. The bail then went before the judge, who said to them orally, you *jointly* and *severally* undertake that if A. B. shall be condemned in this action, he will pay the costs and the amount adjudged against him, or render himself into custody. Are you content? and upon their expressing their acquiescence, the bail piece was filed and an entry made of the recognizance (Caines' Pr. 60, 61; 1 Dunlap Pr. 174; 1 Tidd, 250; 2 Id. 1083, 9th Lond. ed.; Petersdorf on Bail, 289, 290). The effect of this procedure in all cases, was that of a joint and several undertaking, without anything appearing to that effect upon the bail piece, and an action upon this recognizance might always be brought against the bail jointly or separately (*Steward* v. *Patten*, 1 Hall, 40; *Ballard* v. *Kibbe*, *supra*).

The Code simply provides that the defendant when arrested, may give bail by causing a written undertaking to be executed by *two* or more sufficient bail. As I said before, this was meant to be a substitute, both for bail to the sheriff and bail to the ac-

tion, and by analogy to the former practice, the undertaking should have been joint and several. But it was not. It was an undertaking by which the bail only bound themselves jointly, and this being the case I do not see upon what authority, or by what construction, we can hold that they bound themselves severally as well as jointly. In Sheppard's Touchstone (p. 375), after the remark that the condition of an obligation is always taken most in the advantage of the obligor and against the obligee, it is said, " If two, three or more bind themselves in an obligation thus, *obligamus nos*, and say *no more*, the obligation is and shall be taken to be joint only and not several." Such is the case here. The language of the undertaking is *We*, J. Oscar Bixbee, Benj. G. Bloss and Jordan Mott, hereby undertake, &c., which is a joint and not a several undertaking by any one of them.

It is conceded that if the obligors were not severally as well as jointly bound, that this action could not be maintained against the executor of Jordan Mott. It is therefore unnecessary to consider the question, and the judgment should be affirmed.

JOSEPH F. DALY and VAN HOESEN, JJ., concurred.

Judgment affirmed.*

---

* The judgment here was affirmed by the Court of Appeals, on Feb. 22, 1878.